Filed 9/11/20  In re X.A. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re X.A. et al., Persons Coming Under the Juvenile Court Law. | B303728 (Los Angeles County Super. Ct. No. 18CCJP00373A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>S.G.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Martha A. Matthews, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

This appeal follows the juvenile court's order terminating appellant S.G.'s (mother) parental rights to her 11-year-old daughter X.A. (daughter) and 10-year-old son X.A. (son) and ordering adoption as their permanent plan. Mother argues the beneficial parental relationship exception to adoption existed and, therefore, the juvenile court erred in ordering adoption as the permanent plan. Mother also challenges the juvenile court's order summarily denying her Welfare and Institutions Code section 388 petition for modification, in which mother sought to have family reunification services reinstated. As explained below, we find no error and affirm.

## BACKGROUND

### 1. The Family and Previous Dependency Proceedings

Daughter and son are the children of mother and C.A. (father). Mother and father are not married but have been in a relationship on and off for years. Both mother and father have extensive criminal records, including arrests for drug-related charges.

Between November 2009 and April 2011, daughter and son were dependents of the court in an earlier dependency case involving the family. That earlier case was prompted when mother and son both tested positive for methamphetamines at son's birth. In that case, the juvenile court declared daughter

2

and son dependents of the court based on mother's and father's long history of drug abuse and current use of methamphetamine. Mother and father received family reunification and maintenance services. Eventually, the court returned the children to mother's care on the condition mother reside in the home of her mother (maternal grandmother).

## 2. Events Preceding Petition

In January 2018, a special search unit of the Los Angeles County Probation Department attempted to search the home of father, who was at the time on probation for identity theft. Because father was not at his home, the search unit proceeded to a secondary address for father, which was maternal grandmother's home. At maternal grandmother's home, the search unit located father as well as maternal grandmother, mother, and the children. Father was under the influence of an illegal narcotic and was arrested. The home was " 'filthy.' " Drug paraphernalia and drug residue were found inside a backpack in the children's bedroom. Mother "appear[ed] to have a drug problem." She was "very disheveled," had pock marks on her face, had lost most of her molars, and had only a few front teeth. Maternal grandmother indicated she was in the process of moving to another home.

Because children were present, law enforcement notified the Los Angeles County Department of Children and Family Services (Department), which dispatched social workers to the scene. A Department social worker interviewed mother, who admitted using methamphetamine two days earlier and stated she and father often used the drug together. Mother said she had been using methamphetamine on and off for many years. Mother also stated she smoked marijuana often for back pain. Father

3

confirmed that he and mother used methamphetamine and smoked marijuana. Father said mother had been using methamphetamines for the past 20 years. Son told the social worker he saw "weed" at his home, stating it belonged to mother. Daughter told the social worker mother and father both smoked marijuana.

Mother and father admitted to incidents of domestic violence. Mother stated the children were present during one recent incident. Daughter and son both reported seeing mother and father physically fight many times.

The Department took the children into protective custody.

### 3. Petition, Detention, Adjudication, and Disposition

Two days later, on January 19, 2018, the Department filed a Welfare and Institutions Code section 300 petition on behalf of the children (petition).[1] The petition stated counts under both subdivisions (a) and (b) of section 300. In particular, the petition alleged the children were at risk of serious physical harm due to the parents' domestic violence and drug use, as well as their act of creating a detrimental home environment by leaving drug paraphernalia in the home with the children.

At the detention hearing, the juvenile court ordered the children detained from mother and father. Soon after, the children were placed with maternal grandmother, who had moved into her new home and with whom the children had lived since birth. The children remained placed with maternal grandmother for the duration of these proceedings.

The Department continued its investigation. Mother and the children reiterated what they previously had told the

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

4

Department social worker regarding the parents' drug use and domestic violence. In addition, daughter reported when they all lived together maternal grandmother had been their primary caretaker.

At the adjudication hearing held March 20, 2018, mother and father each entered a waiver of rights form and a no contest plea. The juvenile court amended the petition slightly, sustained the petition as amended, and found the children were persons described by section 300.

The juvenile court ordered daughter and son removed from their parents and ordered family reunification services. The court ordered mother and father each to complete an in-patient drug program, drug and alcohol testing, a parenting program, and individual counseling. The parents were granted monitored visitation with the children.

## 4. Reunification Period and Termination of Reunification Services

In an August 2018 report, the Department stated the children continued to live with maternal grandmother, who was committed to caring for them. The children were happy and well-adjusted as they had lived with maternal grandmother since birth. Although they had expressed their desire to reunify with their parents, the children understood if reunification did not occur, they would remain in maternal grandmother's care.

The Department also reported neither mother nor father had complied with their case plans. Mother missed several drug tests and tested positive for marijuana three times, with one test also being positive for amphetamine and methamphetamine. Father also tested positive one time for amphetamine and methamphetamine, was arrested on felony charges, and

sentenced to county jail. Neither mother nor father had enrolled in any court-ordered programs. Nonetheless, mother and father (until his arrest) had been visiting with the children consistently. The visits were monitored and were reported generally to have gone well.

Just prior to a September 2018 review hearing, the Department reported mother again had missed drug tests and once more tested positive for amphetamine and methamphetamine. Soon after, however, mother entered a residential drug treatment program, which included individual counseling, alcohol and drug education, domestic violence classes, relapse prevention, and parenting classes. At the review hearing, the juvenile court found the parents' compliance with their case plans had been partial and continued reunification services.

In February 2019, the Department reported the children continued to do well in maternal grandmother's care. The Department also stated mother had completed her residential treatment program, which included a parenting program, domestic violence program, and anger management program. Mother also had tested negative several times, but missed a few drug tests as well, most recently one month earlier. Although mother stated she had enrolled in an aftercare program, she had not provided written verification of her enrollment or participation in such a program. Mother continued to have monitored three-hour visits with the children three times a week. Maternal grandmother monitored the visits and reported mother was appropriate during the visits. As of the February 2019 report, mother was not employed and did not have stable housing. Father had not complied with his case plan and continued to use drugs.

The Department urged the juvenile court to terminate the parents' reunification services, stating its belief "that at this time the parents are not able to provide the children with a stable home, nor their basic necessities." Although noting "mother has made some progress toward addressing some of the issues that led to the children's detention from her care," the Department remained concerned. The Department cited the family's previous dependency case, where mother similarly had complied with her case plan but when the children were returned to her care and the case closed, mother "allowed the father unlimited access to the children and again placed them at risk due to the parents['] unresolved substance abuse and discord in their relationship." The Department also did not believe the parents understood how to prioritize their children's best interests.

Just prior to a March 2019 review hearing, the Department reported mother had relapsed. In February 2019, mother tested positive for amphetamine and methamphetamine and failed to appear for subsequent drug tests. Although mother had enrolled in an outpatient program, she was discharged from the program for noncompliance.

On March 19, 2019, the juvenile court found mother's progress toward alleviating or mitigating the circumstances leading to the children's removal from her care was partial, and father's progress was minimal. The court terminated reunification services for both mother and father and set the matter for a permanency planning hearing.

**5.    Permanency Planning, Section 388 Petition, and Termination of Parental Rights**

   **a.    *Permanency Planning***

   In July and August 2019, the Department reported the children were happy and doing very well in maternal grandmother's care and had "a very strong connection" with her. Mother continued to visit consistently with the children.  Her visits occurred at least three times a week for three hours at a time.  Maternal grandmother monitored mother's visits and reported mother was appropriate with the children.  Maternal grandmother also monitored father's visits with the children and reported no problems during his visits.

   In August 2019, the Department reported the children wanted to be adopted by maternal grandmother.  They understood their maternal uncle would be a co-adoptive parent because he was maternal grandmother's support system.  The Department recommended adoption as the children's permanent plan.

   **b.    *Section 388 Petition***

   In December 2019, two days before the permanency planning hearing, mother filed two section 388 petitions, one for each child, asking the juvenile court to order additional reunification services for her and to allow her to have unmonitored visits and overnight visits with the children or to release the children to her care.[2]  Mother claimed circumstances had changed since the court terminated reunification services in March 2019.  In particular, mother stated, "Mother has enrolled

---

   [2] Because mother's section 388 petitions were substantively identical, we refer to them together simply as the section 388 petition.

and participated in an outpatient drug program and consistently provided negative drug test results.  At the program, Mother participates in counseling, parenting, and aftercare.  Mother visits the child three times per week for three hours each visit.  Mother is also seeking employment." Attached to the section 388 petition, mother included a letter from her outpatient program stating she had enrolled in September 2019 and was scheduled to complete the program in February 2020.  The letter also indicated mother had taken nine drug tests through the program, all of which were negative.  Mother argued the requested change would be better for the children because "Mother can provide love and support to her child.  Mother would like to play a parental role to the child and the child can accordingly have a parent in the child's life.  Mother would like to provide a safe and nurturing home for her child."

### c. Denial of Section 388 Petition and Termination of Parental Rights

The permanency planning hearing was held on December 11, 2019.  At the start of the hearing, the juvenile court considered whether it should set an evidentiary hearing on mother's section 388 petition.  Counsel for the children and counsel for the Department argued a hearing was not warranted.  Counsel for the children stated, "I'm really pleased to see that mother is making progress; however, I don't think that the attachments to the 388 petition do meet the criteria for setting a 388 [hearing].  It does state that mother enrolled in outpatient services in September [2019] but that she wouldn't be due to compete until February [2020].  This is the second time that this case has been here for the same reasons, and we're now basically two years passed [*sic*] detention on the second version of the case.

9

So it is my understanding that she is visiting regularly.  I did speak again with the maternal grandmother yesterday after receiving the 388, but . . . I don't see enough to set the 388 for hearing at this point."  The Department argued, "Mother is still enrolled in the program and hasn't actually completed the program.  Even the 388 [petition] itself states that mother is still looking for a job.  Even after mother completes the program, she would have to have a period of stability in order to really show that the circumstances have actually changed.  [¶] In addition, the children are very stable in the placement of the maternal grandmother, and I do not believe that the mother has shown it is in the children's best interest . . . to set the matter for a hearing."  On the other hand, mother's counsel argued she had satisfied the prima facie standard for setting a hearing on her section 388 petition.

The juvenile court denied mother's section 388 petition without a hearing.  The court stated, "Even if everything that mother is presenting is true, and that mother is really turning her life around, which I'm very glad to see, there is still the issue of best interest.  This is not the first time this has happened.  There was a prior case, and it was about methamphetamine, and it was back in 2009 and the children were taken away from the mother and then returned.  Then mother had a relapse and the children were taken away again.  [¶] Their grandmother has always been a point of stability in their lives.  She's always been involved in their care, so the children have gone back and forth with mother too many times for it to be in their best interest for this court to disturb the stability that they've attained.  Even if things are going really well for the mother, I simply do not think that there is any possibility that it would be in the children's best

10

interest to reopen the possibility of going back to mother. They've just been through too much already."

The court then proceeded to hear argument on the proposed permanent plan of adoption for the children. Counsel for father had not received any direction from his client and, therefore, entered a general objection on father's behalf. Mother's counsel argued the beneficial parental relationship exception to adoption applied. (§ 366.26, subd. (c)(1)(B)(1).) Counsel noted mother had "provided a sworn statement that she visits her children three times a week three hours each visit, and I'd ask the court to consider that for the c-1/B-1 exception." Mother's counsel did not offer additional support for application of the beneficial parental relationship exception. Counsel for the children argued no exception to adoption applied. Although mother was visiting the children consistently—which counsel stated was "wonderful for the children"—counsel claimed mother could not show she was "providing daily parenting duties for the children." Counsel for the children also noted the children were "both in agreement with adoption."

The juvenile court agreed that no exception to adoption applied, terminated mother's and father's parental rights to daughter and son, and ordered adoption as the permanent plan with maternal grandmother as the prospective adoptive parent. The court stated, "It is certainly true that the children have a relationship with their mother, but the person who has been providing 24/7 care for these children, not just recently, but pretty much throughout their lives, is the grandmother. So I really can't find that the exception [to adoption] applies."

11

**6. Appeal**

Mother appealed the juvenile court's orders denying her section 388 petition and terminating her parental rights.

**DISCUSSION**

**1. Section 388 Petition**

Mother argues the juvenile court erred when it summarily denied her section 388 petition without a hearing. Mother claims the court should have granted a hearing on her section 388 petition because she made a prima facie showing both of changed circumstances and that the requested modification would be in the children's best interest. As discussed below, we find no error.

**a. *Applicable Law and Standard of Review***

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) " 'The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue. Section 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information.' " (*In re Zacharia D.* (1993) 6 Cal.4th 435, 447.) "Even after the focus has shifted from reunification, the scheme provides a means for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) Thus, "after reunification services have terminated, a parent's [section 388] petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re*

12

*J.C.* (2014) 226 Cal.App.4th 503, 527.) The parent's best interests "are simply no longer the focus." (*Ibid.*)

The juvenile court is not required to hold a full hearing on a section 388 petition. "The parent seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citations.] There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

"We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W., supra,* 87 Cal.App.4th at p. 250.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M., supra,* 7 Cal.4th at pp. 318–319.)

**b.      *No Abuse of Discretion***

We conclude mother failed to make a prima facie showing of either changed circumstances or that the requested modification would be in the children's best interest.

As the juvenile court recognized, this is not the first dependency proceeding involving this family. The earlier proceeding also was based in part on mother's drug abuse. In that case, mother completed her drug treatment program and

13

other court-ordered services and the children were returned to her care.  However, mother relapsed, and the instant case was opened.  Mother made progress below, including the completion of an inpatient drug treatment program and negative drug tests.  However, during the pendency of the instant proceedings, mother again relapsed and was discharged from the outpatient drug treatment program in which she had enrolled.  Thus, in the context of this case, by showing she had again enrolled in but had not yet completed an outpatient drug treatment program— although certainly laudable—mother has not shown a genuine change in circumstances.  At most, mother demonstrated changing circumstances, which was insufficient to satisfy her burden.  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615; *In re Casey D.* (1999) 70 Cal.App.4th 38, 49.)

Even if we were to assume mother had made a prima facie case of changed circumstances, she failed to demonstrate the requested modifications would be in the children's best interest.  As noted above, once the juvenile court terminated reunification services, the focus shifted " 'to the needs of the child for permanency and stability.' " (*In re Stephanie M. supra*, 7 Cal.4th at p. 317.)  Here, it is undisputed maternal grandmother had always been, in the juvenile court's words, the children's "point of stability" yet, over the years, the children had been shuttled back and forth between mother and maternal grandmother.  Other than noting her consistent visits with the children, mother does not explain how or why reopening her reunification services would be in the children's best interest.  Conclusory allegations are insufficient.  (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)  The children had found stability and a permanent home

14

with maternal grandmother, and it simply was not in their best interest to disrupt that stability to try yet again with mother.

A section 388 petition "which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D., supra,* 70 Cal.App.4th at p. 47.) We conclude the juvenile court did not abuse its discretion in summarily denying mother's section 388 petition.

2.  **Termination of Parental Rights and the Beneficial Parental Relationship Exception**

Mother also argues the juvenile court erred when it found no exception to adoption and terminated mother's parental rights to the children. Mother claims the juvenile court should have ordered a "lesser permanent plan, such as legal guardianship" which would have "preserve[d] the precious parent-child bond and be in their best interest." We disagree.

a.  *Applicable Law and Standard of Review*

"At a section 366.26 hearing, the juvenile court selects and implements a permanent plan for the dependent child." (*In re Noah G.* (2016) 247 Cal.App.4th 1292, 1299.) At that stage of the proceedings, the preferred plan for the dependent child is adoption. (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 645.) "If there is clear and convincing evidence that the child will be adopted, and there has been a previous determination that reunification services should be ended, termination of parental rights at the section 366.26 hearing is relatively automatic." (*In re Zacharia D., supra,* 6 Cal.4th at p. 447.)

15

Nonetheless, there are statutory exceptions to the preferred plan of adoption. "One exception to adoption is the beneficial parental relationship exception. This exception is set forth in section 366.26, subdivision (c)(1)(B)(i) which states: '[T]he court shall terminate parental rights unless either of the following applies: [¶] . . . [¶] (B) The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' " (*In re Noah G.*, *supra*, 247 Cal.App.4th at p. 1300.) Thus, at the permanency planning hearing, the juvenile court conducts a two-step inquiry. "First, the court determines whether there is clear and convincing evidence the child is likely to be adopted within a reasonable time. [Citations.] Then, if the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of the enumerated statutory exceptions applies." (*In re Breanna S.*, *supra*, 8 Cal.App.5th at pp. 645–646.)

For the beneficial parental relationship exception to apply, the parent "has the burden of proving her relationship with the children would outweigh the well-being they would gain in a permanent home with an adoptive parent." (*In re Noah G.*, *supra*, 247 Cal.App.4th at p. 1300.) Courts consider "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) "A showing the child derives some benefit from the relationship is not a sufficient

16

ground to depart from the statutory preference for adoption. [Citation.] No matter how loving and frequent the contact, and notwithstanding the existence of an ' "emotional bond" ' with the child, ' "the parents must show that they occupy 'a parental role' in the child's life." ' " (*In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 646; *In re Noah G.*, at p. 1300 ["Evidence of frequent and loving contact is not enough to establish a beneficial parental relationship. [Citations.] The mother also must show she occupies a parental role in the children's lives"].) "Moreover '[b]ecause a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement.' " (*In re Breanna S.*, at p. 646.)

In reviewing challenges to the juvenile court's decision as to the applicability of the beneficial parental relationship exception, we employ the substantial evidence or abuse of discretion standard of review, depending on the nature of the challenge. "In evaluating the juvenile court's determination as to the factual issue of the existence of a beneficial parental relationship, . . . courts review for substantial evidence. [Citations.] But whether termination of the parental relationship would be detrimental to the child as weighed against the benefits of adoption is reviewed for abuse of discretion." (*In re Noah G.*, *supra*, 247 Cal.App.4th at p. 1300; see *In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 647.)

### b. *No Abuse of Discretion*

It is undisputed the children were likely to be adopted. Thus, the juvenile court was required to order adoption unless it found an exception to adoption applied. (*In re Breanna S.*, *supra*,

17

8 Cal.App.5th at pp. 645–646.) Mother argues the beneficial parental relationship exception to adoption applied.

Mother claims she had visited consistently with the children, her relationship with the children was parental in nature, and it would be detrimental to the children to sever that relationship. She claims, at the least, the juvenile court should have ordered legal guardianship for the children. The Department agrees mother maintained consistent and regular visitation with the children. Nonetheless, the Department contends the beneficial parental exception to adoption did not apply because mother failed to demonstrate her bond with the children was so significant as to outweigh the statutory preference for adoption. We agree with the Department.

As the Department correctly points out, the evidence shows only that mother visited the children regularly, her visits were always monitored, she generally acted appropriately during visits, and the visits were positive. Although mother shared a bond with her children, there is no evidence she occupied a parental role in their lives by, for example, inquiring about the children's medical or education needs, attending medical appointments or school meetings, or providing food or other essentials for the children. Indeed, it is undisputed maternal grandmother had always been the children's primary caregiver. Although early in the proceedings below, the children stated they would like to reunify with mother, they later expressed their desire to be adopted by maternal grandmother. The Department consistently reported the children were thriving in maternal grandmother's care. In light of the record before us, we cannot agree that mother's relationship with the children outweighed

18

the benefits the children would gain through adoption by maternal grandmother.

Thus, while mother undeniably shared a bond with the children, we conclude the juvenile court did not abuse its discretion in finding mother failed to demonstrate her relationship with the children outweighed the stability and well-being they would gain in a permanent home with maternal grandmother.

## DISPOSITION

The December 11, 2019 orders are affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

19